REECE *v.* STATE.

(Division A. Oct. 7, 1929.)

[123 So. 892. No. 27939.]

*Lacy & Lacy,* of Booneville, for appellant.

*Hardy R. Stone,* Assistant Attorney-General, for the state.

McGowen, J., delivered the opinion of the court.

The appellant, Bert Reece, was indicted by the grand jury of Prentiss county, convicted by the jury, and sentenced to serve a term of life imprisonment in the state penitentiary. From the conviction and sentence, appeal is prosecuted to this court.

Reece was indicted for the killing of Clovis Cooper, his brother-in-law, the deceased having been stabbed eleven times, according to the state's evidence, with what is termed a "watermelon" Barlow knife. We shall detail such facts as we deem material, as we take up the several assignments of error presented here.

First. Appellant insists that the verdict was contrary to the evidence, and that at all events the offense could

not have been murder—only manslaughter, if any crime
at all. This is a record of many pages, and we shall
not undertake to detail all of the evidence; but Dee
Cooper, an eyewitness, testified that, at a time when the
deceased and his wife and other members of the Reece
family were quarreling, Bert Reece, the appellant, came
upon the scene, approached the deceased, and struck him
a blow, and cut him with the knife just above the abdo-
men in front, and thereupon Cooper caught the hand in
which the knife was held. While they were standing in
that position Mrs. Reece, the mother of the appellant,
ran up to the deceased and struck him over the head with
a piece of timber, which caused the deceased to release
his hold upon the arm which held the knife of the ap-
pellant, and thereupon the appellant continued to cut the
deceased. The five members of the Reece family, in-
cluding appellant, testified that the deceased was the ag-
gressor, had invited the difficulty, and was undertaking
forcibly to carry away the baby of their sister Alma and
the deceased. The sister Alma and the deceased had
separated some weeks before, and the contention of the
state was that the deceased visited the Reece home for
the purpose of seeing his baby. There is contradiction
in the record as to whether he asked for his baby, and
the mother voluntarily surrendered the baby to the de-
ceased, or whether he forcibly took it from her arms;
at any rate they walked together some five hundred or
six hundred yards down the road, and then came back to
within sixty yards of the Roberts home, but they were
in the road, and could not be seen from the Roberts home,
according to the testimony of Mr. and Mrs. Roberts.

The appellant testified that the deceased had him on
the ground and had choked him, and that he cut him in
order to "get him off of him." The other members of
the family were very indistinct in their recollection of
the precise manner of the cutting. There was evidence
that the deceased had a small rock in his pocket, and

Roberts, their neighbor, testified that after he heard a blow a rock came over the bank and weeds.

We have detailed evidence sufficient to show that there was a sharp conflict, and that it was a question for the jury, as to how the difficulty arose, who was the aggressor, and, if the witness Dee Cooper was believed by the jury, then the state made out a case of murder. The credibility of the witnesses and the weight of the evidence is essentially a question for the jury, which we cannot disturb. We have announced this rule many times, and it is unnecessary to again collate and cite the cases so holding, a number of which we have cited on the same proposition in the case No. 28230, *Tom Steward* v. *State,* 123 So. 891, this day decided.

Second. The appellant urges that this case should be reversed, because the state failed to prove the venue. The state witness, Dee Cooper, was asked whether a man had driven by the scene of difficulty just as he (Dee Cooper) was running away, and after that question he was asked these questions, which we are here setting forth:

"Q. What county was that in, Dee? A. Prentiss, I reckon.

"Q. What state? A. Mississippi."

No objection was made to the form of the answer of Dee Cooper, and there was no other reference to the venue in the entire record. If the use of the words "I reckon" by the witness had been objected to, and the point made, there is no doubt in the mind of this court but that the venue could have and would have been made clear, or the knowledge of the witness as to what county the crime occurred in would have been made manifest. There was no objection to it; it passed unnoticed by all parties, so far as the record discloses; and it is now contended that "reckon" means "to think, suppose, or guess," and of course the witness would have been compelled, on objection, to have disclosed his knowledge, for

his guess or opinion would have been excluded. Used as a colloquialism, the word "reckon" often is used to indicate the best judgment of the party using the expression; and while it is true that venue must be proven as laid in the indictment and although no objection is made in the lower court, a failure to make proof of the venue has been numerous times held to be reversible error, although raised for the first time in this court. Yet this evidence is treated as competent, not being objected to, and is sufficient, in our opinion, uncontroverted, uncontradicted, and unquestioned, and establishes that the crime was committed in Prentiss county. See 23 C. J. 39, section 1783.

Third. Appellant next urges, by citing a score of rulings and remarks of the court in passing on the competency of the evidence as it is adduced, and in propounding questions to the witnesses, which he contends as a whole shows that the judge assumes a partisan attitude on behalf of the state, and communicated that to the jury. In most of the instances cited counsel made no objection, and at no time did he call the attention of the court to his objection, when made, as presented here, and the ruling of the judge upon the admissibility of the evidence is not challenged, save in one or two particulars, to which we shall hereafter advert. The trial judge did cut off a repetition of questions, and propounded two or three pertinent questions to witnesses; but, taking all of the isolated instances grouped together, we cannot fairly say that the conduct of the judge evinced a partisan spirit, which was communicated to the jury. Of course, every trial judge should abandon partisanship in the courtroom in the trial of all cases, but in the trial of criminal cases he should be astute to see that no word falls from his lips calculated to prejudice the rights of the defendant to have the jury pass upon the issue submitted to it, as to the guilt or innocence of the defendant on trial, uninfluenced by the views of the judge. On

that issue, our system of jurisprudence has delegated that responsibility to the jury, and to it alone. The right of cross-examination should not be abridged, except that it should be kept within limits confined to the issue then on trial, and the court of necessity must protect itself and the public from a needless repetition of unimportant matters.

We do not think this case falls within the rule announced by Judge Calhoon in the case of *Brown* v. *State*, 88 Miss. 166, 40 So. 737; if we did, we would unhesitatingly reverse the case. As illustrative of the counsel's contention, two rocks were exhibited before the jury, and witnesses asked to make comparison, and the court remarked that that was a matter of which the jury could be the judge, and not a matter of expert testimony. Another illustration was when the witness Womack, sheriff of Prentiss county, was on the stand; the sheriff was asked, ''What did he say?'' (referring to the appellant), in a conversation he had with the sheriff at the time of his arrest; and the court interrupted, saying, ''Wait a minute; Bert's here in court doing his own testifying, you know.'' It later developed that the conversation sought to be elicited was self-serving, and not disserving, on the part of the appellant, and in no view of the case was competent.

Fourth. Appellant next assigns as error that the lower court erred in refusing to permit the testimony of W. A. Koon, a state witness, on cross-examination, in reference to threats made by the deceased against the appellant and his family. While the state was introducing its evidence in chief, and this witness was on the stand, and at a time when the state's evidence as a whole showed, if believed by the jury, that the appellant was the aggressor, and had stabbed the deceased at a time when there was no difficulty between them, except verbal, as to other members of the appellant's family, this occurred:

"Q. Did you have a conversation with Clovis Cooper?

"The Court: Wait a minute.

"Mr. Adams (the district attorney): We object.

"The Court: Any conversation he had with Clovis Cooper there is not competent at this stage of the game.

"Q. Did you hear him say anything about going there to the Reece house and making any threats?

"The Court: Wait a minute; don't answer that.

"Mr. Adams: We object.

"The Court: Objections sustained."

We think the court correctly held that an uncommunicated threat, evidence of which is offered before any evidence tends to show self-defense, is not admissible. It is quite well settled that uncommunicated threats are admissible in a case where the facts are in controversy and self-defense is shown, or the overt act of the deceased is shown; then in that stage of the trial such evidence is competent. Appellant did not again offer, after having introduced his evidence of the overt act and of self-defense, to prove what this conversation was. Another reason that is patent: This record does not disclose whether any threat would have been testified to by this witness, had he been allowed to answer the question; nor did counsel in any wise get into this record what the answer would have been; so we cannot predicate error upon this action of the lower court.

Fifth. It is next urged that the court erred in not permitting Alma Cooper, the wife of the deceased, to give testimony relative to the reason which caused her to separate from the deceased. The court was correct in this ruling. The reason that caused the separation of the parties some days before could have shed no light on the issue then being tried before the jury. The cause of the separation was not a part of the *res gestae* of the crime, and in the state of this record we can think of no view on which this evidence would have been competent.

We have carefully considered this record, and can find no valid reason for disturbing the verdict of the jury.

*Affirmed.*