220 So.2d 295 (1969)
Gaston TURNER
v.
STATE of Mississippi.
No. 45281.
Supreme Court of Mississippi.
March 3, 1969.
Rehearing Denied March 31, 1969.
*296 Albert Sidney Johnston, III, Pascagoula, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., and Laurence Y. Mellen, Special Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
The appellant, Gaston Turner, was indicted for the crime of murder arising out of the shooting and death of Jerome McCool on November 12, 1967, at the Paddock Club. The appellant was tried in the Circuit Court of Jackson County, Mississippi, and convicted of the crime of manslaughter and was sentenced to ten years in the Mississippi State Penitentiary.
The facts pertinent to this appeal are as follows: It is undisputed that the appellant shot Jerome McCool in the corner of his right eye with a .38 Cobra Colt snub-nosed revolver and that McCool died as a result of these wounds. Other relevant facts leading up to the shooting are in dispute. Jerome McCool arrived at the Paddock Club sometime between 10:00 and 11:30 P.M. but was denied admission by a hostess who testified he had been drinking. A witness for the prosecution testified that McCool was not intoxicated at the time. All of the witnesses for the State denied hearing McCool make any threatening remarks, but stated that he was leaving peacefully. The night was foggy, but there was a large floodlight outside. Witness Charles Weaver testified that when McCool reached his car some forty to fifty feet from where the appellant was standing he took his car keys from his pocket and turned around and was facing the appellant when the appellant shot him. The car keys were found under the edge of McCool's body. No weapon was found. Fines Ellis testified that after the shooting he heard the appellant say, "Well, I'll get the rest of them." Frankie Culpepper stated that when he asked to be allowed to use the telephone at the club to call the police and an ambulance he was told by appellant that they had no telephone, although they actually did. The record undisputedly shows that the appellant never bothered to check on the condition of McCool, but simply leaned against the club building. He testified he was afraid to go to where McCool lay and where some friends of McCool had congregated.
Mrs. Turner, who was taking admissions at the door of the club on the night of the shooting, testified that she saw McCool drive up into the yard, spin around and around until the car almost turned over, and then slide up to the fence and park. Mrs. Turner testified that she denied McCool admittance because he was drunk, but that he stayed outside near the door for an hour or an hour and a half and made obscene remarks to people entering the club. Mrs. Turner and McCool got in a pushing match, and when the appellant went to her rescue, Mrs. Turner testified that McCool stated, "I'm going to get my gun and kill all you * * *.," and that he then broke and ran for his car. She testified that the appellant pleaded with him not to do it. She further stated that she called information and asked them to send an ambulance and the police and that she allowed Frankie Culpepper to use the telephone. She also *297 testified that McCool's friends threatened "to get" the appellant after the shooting.
Mrs. Dykes, another employee of the club, stated that the appellant had a blood clot in his leg and it was because of this that he leaned against the building.
Witnesses for the defense in substance testified to the effect that McCool threatened the appellant, walked quickly or trotted to the car, reached inside, turned around quickly with his hand raised. They stated that it was very foggy and that they were unable to see what McCool had in his hand.
There are numerous conflicts in the testimony, other than those discussed above, regarding time, distances, where the car keys were, whether the car door was opened, who closed the door, who arrived at the body first, and similar disputes.
The appellant assigns ten errors, six of which relate to the evidence. The other four errors assigned are: One, the State failed to prove venue. Two, the court erroneously placed an arbitrary limit on the time for oral argument and then refused to allow use of the time so allotted. Three, Instruction No. 2 for the State is incorrect. Four, appellant should have been given the peremptory instruction requested, or granted a new trial.
Appellant's first contention is that the case should be reversed because the jury verdict is against the overwhelming weight of the evidence. As we have held time and time again, the jury is the trier of fact. A careful review of the record shows that there were numerous conflicts in the testimony of witnesses and convinces us that the jury had ample evidence upon which to find the defendant guilty of manslaughter. We are forced to conclude therefore that the verdict is not against the overwhelming weight of the evidence.
The appellant first urges that the case at bar should be reversed because the prosecution failed to establish venue. When asked in what county the crime was committed, Charles Weaver, witness for the State, testified, "I guess it would be in Jackson County." After an objection was made by the attorney for the appellant, the witness stated, "It would be in Jackson County, then." Charles Weaver further stated that the shooting occurred in Mississippi. Venue is not proved by a witness who testifies that he guesses venue is in a named county. Powers v. State, 156 Miss. 316, 126 So. 12 (1930). After an objection was made by appellant's attorney in the case at bar, the witness corrected himself and stated positively that the crime occurred in Jackson County. This is the only evidence offered as to venue by the State. As was suggested in Reece v. State, 154 Miss. 862, 123 So. 892 (1929), we hold that such a correction was properly permitted and was adequate to establish venue. Although additional proof could have been offered by the State to prove venue even more conclusively, we hold under all the facts that the proof was sufficient to meet the burden placed on the State.
Appellant's attorney also alleges that the appellant was deprived of his rights to a fair and impartial trial. These objections relate to the sustaining and overruling of objections made by the appellant and the State; that the trial court required appellant's counsel to proceed with undue haste and was obviously harsh in his rulings toward appellant's attorneys; and finally, that insufficient time was allowed appellant for his summation.
This Court recognizes and it is common knowledge that the courts of Jackson, Harrison and other counties on the Coast are extremely congested. The trial judge has the duty of conducting an orderly trial. Luttrell v. United States, 320 F.2d 462 (5th Cir.1963). It is also his duty to see that the court's time is used economically. Griffin v. State, 171 Miss. 70, 156 So. 652 (1934). Likewise, the trial judge is allowed discretion in the conduct of a trial. Stokes v. State, 240 Miss. 453, 128 So.2d 341 *298 (1961). The special bill of exceptions filed by appellant fails to comply with the statutory requirements. Geiselbreth v. Mississippi Power & Light Co., 166 Miss. 749, 147 So. 784 (1933); Pittman v. State, 155 Miss. 745, 124 So. 761 (1929). Nevertheless, because of the nature of this case, we have duly considered it. A trial judge should be meticulously careful in seeing that the defendant is afforded ample time in any case in order that he may adequately present to the jury the instructions and have sufficient time for his summation. The ultimate of a criminal prosecution is the verdict of the jury and frequently the decision of the jury is made substantially on the presentation of the law and the summation of the facts. It is a far better thing for the trial court to be indulgent in the granting of time for presenting the instructions and summation than to be strict or to be frugal in the allowance thereof.
After a careful and objective study of the record in the case at bar we find that the proof is insufficient for us to hold that the court abused its discretion. We find, therefore, that the court properly exercised its prerogative in carrying out its duties. We further hold that the conduct of the trial was not prejudicial to the appellant and that none of his constitutional rights were infringed.
The appellant assigns as error the granting of the following instruction requested by the State:
The Court instructs the jury for the State that to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be actual, present and urgent or the slayer must have reasonable grounds to apprehend and in fact apprehend a design on the part of the deceased to kill him, or to do him great bodily harm, and, in addition to this, that there was imminent danger of such design being accomplished; and hence mere fear, apprehension, or belief, however sincerely entertained by one person, that another designed to take his life or to do him some great bodily harm will not of itself justify the former in taking the life of the latter party. A party may have an apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the jury may determine the reasonableness of the ground upon which he acted. (Emphasis added.)
The gravamen of appellant's contention is that the words "* * *, and, in addition to this, that there was imminent danger of such design being accomplished * * *" shifted the burden of proof to the appellant and created confusion. Similar instructions have been approved numerous times by this Court. Holmes v. State, 199 Miss. 137, 24 So.2d 90 (1945); Harris v. State, 47 Miss. 318 (1872); Evans v. State, 44 Miss. 762 (1870). The appellant urges that the instruction in Reddix v. State, 134 Miss. 393, 98 So. 850 (1924) supports his contention that the instruction in the case at bar is erroneous. We cannot agree with this contention because the two instructions are clearly distinguishable. In the Reddix case the words "* * * it was encumbent on the defendant to show * * *" causes the burden of proof to shift to the defendant and makes the instruction erroneous. Likewise, the rule set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933) is inapplicable in this case for the reason that the case at bar presented several witnesses who supported the State's factual presentation of the killing, including an eyewitness to the homicide.
We find that the antecedent of the word "this," in the parenthetical phrase "in addition to this," is not crystal clear. However, we are convinced that the antecedent is the word "design." Although this portion of the instruction considered solely might be open to question, when the instruction is read as a whole and together with all the other instructions granted the State and the appellant, we safely conclude that the law pertaining to self-defense was thoroughly and clearly presented to the jury *299 and that no reversible error was committed by granting the instruction complained of.
Material and conflicting errors of fact were presented in the testimony offered by the State and the appellant, which errors were for determination by the jury; therefore, the appellant was not entitled to a peremptory instruction and the court properly left these questions for determination by the jury.
For the foregoing reasons, the judgment of the lower court is affirmed.
Affirmed.
ETHRIDGE, C.J., and INZER, SMITH and ROBERTSON, JJ., concur.