JONES, Justice.
Appellant was convicted in the Circuit Court of Quitman County of manslaughter, sentenced to serve a term of twelve years in the penitentiary, and appeals here. We affirm.
*300 Appellant was the owner and operator of a place of business that served both food and beer. On the afternoon and in the early evening of Friday, January 12, 1968, appellant, the deceased, W. T. Goode, Mrs. Teena Fowler, and her daughter, (both the mother and daughter being employees of the place) together with Miss Clara Smith and Miss Deborah Smith, were present when the shooting occurred. The testimony indicated that appellant and Goode were in the back of the room drinking beer, and while those in front did not hear the cause of the disagreement, they did hear appellant and Goode arguing, and some of them heard Corbin tell Goode to get out. Thereupon Goode walked around the bar and stopped and appellant again said: “I mean for you to get out and not to come back.” Appellant went behind the counter and Goode stopped at a table. Thereupon appellant secured a pistol from under the counter and shot through the door. Some of the witnesses said appellant shot high, but one who measured said the hole was four feet from the floor.
After the shot, Goode walked to the door, turned around and looked at appellant, and said something to the effect, “You done it now.” He then went out of the door, slamming it behind him. There was unre-butted testimony at the trial from the witnesses who positively stated that Goode had left his coat inside the cafe.
He returned a very short time later from the direction of his car, kicked the door wide open and jumped back, at which time appellant shot him. Goode walked out into the yard and fell. Appellant, aided by another man, placed Goode in a truck and carried him to the hospital, but he was dead upon arrival.
Appellant testified that he did not know exactly what caused the argument between himself and Goode. In November, before the date of the shooting on January 12, appellant testified that he told Goode that if he “didn’t behave he was going to have to leave,” and this was the only misunderstanding they had before the day of the shooting. Appellant stated that prior to the day of the shooting, he and another witness or witnesses had seen Goode in the place with a gun.
The following assignment of errors is presented.
The first assignment was abandoned before argument.
(2) The oral comments of the trial judge were improper and prejudicial to defendant.
(3) Refusing his requested instruction No. 8-A.
(4) Granting to the state its instruction.
(5) Failure of the lower court to grant defendant his motion for a directed verdict at the close of the state’s case.
(6) Failure of the lower court to grant defendant his motion for a peremptory instruction at the close of the case.
(7) Failure of the lower court to sustain defendant’s motion for a new trial.
We feel that it would be useless to discuss assignments 5, 6, and 7.
As far as assignment number 2 is concerned, regarding comments of the trial judge, we agree that some of them were possibly improper and should not have been made. However, after carefully reviewing the statements about which appellant complains, we do not consider them of sufficient gravity to reverse or as constituting any reversible error.
The instruction mentioned in assignment number 3 reads as follows:
The court instructs the jury for the defendant, Bill Corbin, that if the evidence shows that W. T. Goode was a much larger and stronger man than the defendant, Bill Corbin, and Goode was capable of inflicting great and serious bodily harm upon Corbin and Corbin had reasonable grounds to believe and did *301 believe as a man of ordinary reason that he was then and there in danger of such harm at the hands of Goode and Corbin fatally shot Goode to protect himself from such harm, then Corbin was justified, and your verdict should be “NOT GUILTY”, even though the evidence later shows that Goode was not armed, and even though it may now appear to you that Corbin was not at the time in imminent danger of being killed by Goode or of receiving great bodily harm at Goode’s hands.
This instruction was properly refused because of its inapplicability to the facts here. The record did show that Goode was a larger man than appellant, but at the time of the shooting, appellant was some distance from him and behind the counter while Goode was at the door of the building. There was no chance for him to use his superior strength, if such he had, upon appellant from the place where he was standing. Furthermore, on direct examination by his own attorney, appellant testified in answer to the questions quoted as shown by the answers.
Q. Could you see when he left your door, which way he went?
A. No, sir.
Q. You didn’t do it?
A. No, sir.
Q. A—
A. —when I fired that gun, it scared me.
Q. What scared you?
A. After I had to fire the gun to make him leave, it scared me.
Q. Were you scared of W. T. ?
A. Yes.
Q. Why?
A. I thought he had a gun.
On cross-examination by the district attorney, the following question was asked and the quoted answer given:
Q. Is your defense self-defense or an accident?
A. I’m going to say this, I thought W. T. had a gun.
There was no claim by the appellant that there was danger because of the difference in size between the men.
The instruction mentioned in assignment 4 reads as follows:
The Court instructs the Jury for the State that to make the shooting and killing of another with a deadly weapon justifiable on the grounds of self-defense, the danger to the defendant must be either, actual, present, and urgent, or the defendant must have reasonable grounds to.apprehend the design on the part of the assaulted party to kill him or to do him great bodily harm, and in addition to this that there was imminent danger of such design being accomplished, and hence mere fear, apprehension or belief, however, sincerely entertained by one person that another designs to take his life or to do him some great bodily harm will not justify the former in shooting and killing the other party. A party may have a lively apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, yet he acts at his peril, he is not the final judge, the Jury may determine the reasonableness of the grounds upon which he acted.
It is argued that this instruction shifts the burden from the state to the defendant, and Reddix v. State, 134 Miss. 393, 397, 98 So. 850 (1924) is cited to support this contention. The instruction there reads as follows:
The court charges the jury,, for the state, that in order to justify the killing of deceased on a plea of self-defense it was incumbent on the defendant to show: That at the time of the homicide he was *302 in imminent danger, at the hands of deceased of his own life, or of great bodily harm.
The instruction here is substantially 'in the words of instructions that have been approved in Dobbs v. State, 200 Miss. 595, 27 So.2d 551, 29 So.2d 84 (1947) and Coleman v. State, 198 Miss. 519, 22 So.2d 410, 23 So.2d 404 (1945), and the authorities therein cited back to Wesley v. State, 37 Miss. 327 (1859). See also Turner v. State, Miss., 220 So.2d 295 (rendered March 3, 1969) and authorities therein cited.
The above instruction given for the state in the instant case does not shift the burden to the defendant — is proper and has been approved in many cases, as shown.
The case is affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, PATTERSON, and ROBERTSON, JJ., concur.