# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-00550-SCT

*KIMBLE PETER SMITH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/26/2003 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS P. WELCH, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSE BENJAMIN SIMO |
| DISTRICT ATTORNEY: | DEWITT BATES, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/30/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. On May 23, 2002, Defendant-Appellant Kimble Peter Smith was indicted in Pike County, Mississippi on Count I of sexual battery under Miss. Code Ann. Section 97-3-95(1)(c) and Count II of touching and handling a child for lustful purposes under Miss. Code Ann. Section 97-5-23. On February 26, 2003, Smith was convicted on all charges by a jury in the Pike County Circuit Court and sentenced to thirty (30) years imprisonment on Count I and twenty (20) years imprisonment on Count II, to run consecutively. Thereafter, Smith filed a motion for a new trial or in the alternative a judgment non obstante veredicto,

which was denied. Smith then filed a notice of appeal with this Court on March 11, 2003.
On appeal, Smith argues the verdict was against the weight and sufficiency of the evidence;
that the trial court erroneously failed to declare a mistrial; and that the trial court erred in
its admission of expert witnesses.

**FACTS**

¶2.     On December 21, 2001, Kimble Peter Smith, along with his two young daughters,
arrived at the home of Joan and Karen Doe.[1]  Joan was fifteen (15) years old at the time,
while Karen was eleven (11) years old.[2]  Joan and Karen's father was barbecuing, and Smith
came and introduced himself as a friend of Joan and Karen's uncle.  After Smith stated he
was going to Wal-Mart, Joan and Karen's father gave them money and allowed them to
accompany Smith and his two young daughters.  Karen testified that, upon entering the car,
Smith told her and Joan that "whatever goes on in this car stays in this car."

¶3.     On the way to Wal-Mart, Smith stopped at a gas station, let Joan and Karen out, and
drove away.  Approximately thirty minutes later he returned without his young daughters,
picked Joan and Karen up, and proceeded to Wal-Mart.  Karen exited the vehicle upon
arriving at the Wal-Mart parking lot, but Smith then quickly locked the doors and drove off
with Joan.

---

[1]We use fictitious names to protect the identities of the victims.

[2]Despite Joan being the older of the two, the principal of their elementary school, testified that Karen seemed more like the older sister. This was due in part to the fact that Joan had an IQ of 51.

¶4.    At trial, Joan testified that Smith took her to a secluded gravel road and ordered her out of the vehicle. Joan testified that Smith then kissed her neck, fondled her breasts, and inserted his finger into her vagina. Smith then ordered Joan to get back into the vehicle and take off her clothes, but she refused. Following her refusal, Smith forced Joan to touch his penis, but after she began crying he stopped and drove her back to Wal-Mart.

¶5.    At Wal-Mart, Smith gave Joan twenty (20) dollars, with which Joan bought a CD player, and shared the remainder with Karen who purchased a jogging suit. After leaving Wal-Mart, Smith stopped at a nearby mall so Joan could buy batteries for the CD player, leaving Karen alone in the vehicle with Smith. Karen testified that Smith then crawled into the back seat with her. He began describing a game of "hide-and-seek" where "you had to listen to [one person] and do whatever he say [to] do." Thereafter, Smith began touching her on the thigh, and Karen slapped his hand. Smith then warned Karen that if she slapped him again, "it was going to be worser." At that moment, however, Joan was walking toward the vehicle, and Smith returned to the driver seat. He then asked the girls if they would like to go play "hide-and-seek," but when they refused he took them home.

¶6.    At trial, Joan, Karen, and their aunt all testified that following the date of the incident, Smith repeatedly drove through their neighborhood. Beth Doe, the aunt of Joan and Karen,[3] testified that Smith drove through the neighborhood ten or fifteen times over the course of the day "almost every other day." On the way to school on January 2, 2002, Karen noticed Smith's vehicle following the vehicle occupied by Joan and Karen. Upon

---

[3]We use a fictitious name in identifying the aunt in order to protect the identities of the victims.

arrival at the school, Karen told her teacher, who then directed her to principal Alonzo Dillon. Karen told Dillon about being followed by Smith and the events of the day when she and Joan went with Smith to Wal-Mart. Dillon then notified the police. Subsequently, Officer Randy Perryman interviewed Joan and Karen and began an investigation.

¶7. At trial, Principal Dillon testified that, "I don't know if they told me everything, but what they told me, I felt they were telling me the truth." Officer Perryman testified that during the entire investigation he never came across any information that conflicted with what the girls were telling him. Joan and Karen were also interviewed respectively by Keith Stovall and Bente' Hess of the Children's Advocacy Center, who were offered as expert witnesses in the field of forensic interviews in child sexual abuse cases. Stovall opined Joan's statements were "very consistent and credible with a victim of sexual abuse." Hess opined that Karen "was highly credible ... she didn't appear to be fabricating, and she was very consistent with her statement each time."

¶8. On February 26, 2003, Smith was convicted on all charges by a jury in the Pike County Circuit Court and sentenced to thirty (30) years on Count I of sexual battery under Miss. Code Ann. Section 97-3-95(1)(c) and twenty (20) years on Count II of touching and handling a child for lustful purposes under Miss. Code Ann. Section 97-5-23, to run consecutively. Thereafter, Smith filed a motion for a new trial or in the alternative a judgment non obstante veredicto, which was denied. Smith appeals.

4

¶9. Smith raises three issues on appeal. First, he argues the jury verdict was against the overwhelming weight and sufficiency of the evidence. Second, he asserts the trial court's failure to declare a mistrial for the improper viewing of a videotape was reversible error. Third, he contends the trial court's determination that Keith Stovall and Bente' Hess were expert witnesses in the field of forensic interviewing amounted to reversible error.

I. **Whether the jury verdict was against the overwhelming weight and sufficiency of the evidence**

*1. Sufficiency of the Evidence*

¶10. The standard of review for a post-trial motion, like a motion for judgment non obstante veredicto, is abuse of discretion. *See Brown v. State*, 907 So. 2d 336, 339 (Miss. 2005) (citing *Howell v. State*, 860 So. 2d 704, 764 (Miss. 2003)). The key inquiry is whether the evidence shows "'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" *Brown*, 907 So. 2d at 339 (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). In other words, the question to be answered, viewed in the light most favorable to the prosecution, is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 907 So. 2d at 339 (citing *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citations omitted) (emphasis in original)). Assuming arguendo that this Court may believe the evidence at trial failed to establish guilt beyond a reasonable doubt, this is, nevertheless an insufficient basis

5

for reversal. *See Brown*, 907 So. 2d at 339. As long as "'reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' [then] the evidence will be deemed to have been sufficient." *Id*. (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶11. Smith argues that only Joan and Karen could prove that he perpetrated any wrongs, and their testimony was inconsistent. Moreover, he asserts there was no physical evidence supporting their testimony.

¶12. In response, the State maintains that both Joan and Karen recounted the events in detail on numerous occasions, including at trial, and those details were uniformly consistent. Principal Dillon and Officer Perryman found the girls statements to be consistent and credible. The trial court found the information which Dillon and Perryman received from the girls, and upon which they based their testimony, was admissible under Miss. R. Ev. 803(25), the "tender years" exception to the hearsay rule. Miss. R. Ev. 803(25) states:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness ....

Miss. R. Ev. 803(25). The trial court stated, "[t]here were no suggestive techniques used. There is nothing about the age or knowledge or the experience to indicate that they fabricated this ... there is sufficient indicia of reliability to qualify them for admission, the statements made to Officer Perryman and the statements made to [P]rincipal Dillon." The requirements of Miss. R. Ev. 803(25)(b)(1) were satisfied, as both girls testified at the trial.

6

¶13.   Moreover, because they testified at trial, the statements of the girls are arguably not hearsay under Miss. R. Ev. 801(d)(1)(B) which provides:

> A statement is not hearsay if: ... (1) ... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive ....

Miss. R. Ev. 801(d)(1)(B).

¶14.   Expert witnesses from the Southwest Mississippi Children's Advocacy Center also found the girls statements to be consistent and credible.  Keith Stovall testified Joan's statements were "very consistent and credible with a victim of sexual abuse."  Bente' Hess testified that given the detail, consistency, and clarity of Karen's statements, "her interview was highly credible."  The only discrepancy which Hess observed in Karen's statements regarded when the incident occurred.  However, Hess further testified that trouble in accurately placing dates is not unusual in children of Karen's age group.

¶15.   The question to be answered, viewed in the light most favorable to the prosecution, is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ***Brown***, 907 So. 2d at 339 (citing ***Jackson***, 443 U.S. at 315). Joan's testimony was that Smith kissed her neck, fondled her breasts, and put his fingers into her vagina.  Such conduct clearly constitutes sexual battery under the provisions of Miss. Code Ann. Section 97-3-95(1)(c).[4]  Karen's testimony was that Smith propositioned her to

---

[4]Section 97-3-95(1)(c) states: "A person is guilty of sexual battery if he or she engages in sexual penetration with: A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child ...."

7

play a deviant game of "hide-and-seek" and began touching her on the thigh. This conduct clearly constitutes touching and handling a child for lustful purposes under the provisions of Miss. Code Ann. Section 97-5-23.[5] Therefore, a rational trier of fact could find the testimony of Joan and Karen, which was corroborated by their prior statements to the elementary school principal, an investigating officer, and experts in the field of child sexual abuse, all of whom interviewed the girls, was sufficient to establish beyond a reasonable doubt that the accused committed the acts charged and that the essential elements of each count were established beyond a reasonable doubt. As the evidence is sufficient to support the conviction, this argument is without merit.

2.    *Weight of the Evidence*

¶16.    "A motion for new trial challenges the weight of the evidence. A reversal is warranted only if the lower court abused its discretion in denying [the motion]." **Howell**, 860 So. 2d at 764 (quoting **Edwards v. State**, 800 So. 2d 454, 464 (Miss. 2001)). "A

---

[5]Section 97-5-23(1) states:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent ... shall be guilty of a felony and, upon conviction thereof, shall be fined in a sum not less than One Thousand Dollars ($1,000.00) nor more than Five Thousand Dollars ($5,000.00), or be committed to the custody of the State Department of Corrections not less than two (2) years nor more than fifteen (15) years, or be punished by both such fine and imprisonment, at the discretion of the court.

Because this was Smith's second offense under Section 97-5-23, the provisions of Section 97-5-23(3) warranting imprisonment of up to twenty (20) years were applicable.

greater quantum of evidence favoring the [S]tate is necessary for the [S]tate to withstand a motion for a new trial, as distinguished from a motion for j.n.o.v." ***Pharr v. State***, 465 So. 2d 294, 302 (Miss. 1984). However, "the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." ***Bush v. State***, 895 So. 2d 836, 844 (Miss. 2005). In reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will disturb a verdict only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Id***. "Though the standard of review in such cases is high, '[t]his Court has not hesitated to invoke its authority to order a new trial and allow a second jury to pass on the evidence where it considers the first jury's determination of guilt to be based on extremely weak or tenuous evidence [,] even where that evidence is sufficient to withstand a motion for a directed verdict.'" ***Dilworth v. State***, 909 So. 2d 731, 737 (Miss. 2005) (quoting ***Lambert v. State***, 462 So. 2d 308, 322 (Miss. 1984) (Lee, J., dissenting) (citations omitted)).

¶17.     In this case, the corroborated testimony of Joan and Karen provided a sound basis for the jury's determination of guilt. As such, the jury's verdict was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." ***Bush***, 895 So. 2d at 844. Therefore, this argument is without merit.

**II. Whether the trial court's failure to declare a mistrial for the improper viewing of the videotape was reversible error**

¶18.    A videotape of an interview with Karen was shown to the jury. In that videotape, Karen was asked whether she had any knowledge of Smith committing similar offenses with other children.[6] In a discussion outside the jury's presence, it was agreed among the parties that this portion of the videotape would be edited out before the videotape was viewed by the jury.[7] At trial, however, the videotape was played, and that portion had not been edited out. While the question itself was heard by the jury, the tape was stopped before Karen's answer was heard.[8] Defense counsel moved for a mistrial, but that motion was overruled by the trial judge. However, the trial judge did admonish the jury to disregard the question and to refrain from drawing any inferences from it one way or the other. The jury affirmatively agreed to do so.

¶19.    On appeal, Smith argues he was prejudiced by the unsubstantiated prior bad act question and, therefore, his motion for mistrial should have been granted. He alleges that when the question was posed and defense counsel objected, the jury was clearly informed of what the answer to the question was. As a result, he asserts the trial court's failure to grant the motion for a mistrial was reversible error.

---

[6]In the videotape, Karen answers affirmatively, that she does have knowledge of similar conduct by Smith.

[7]The trial judge held that regarding the "portions of any offenses to other kids, the motion to suppress ... is sustained."

[8]The trial judge stated that, "I think all that was in was, 'Do you know if he tried to do that to somebody else?'"

¶20. Conversely, the State argues the incident was entirely inadvertent and the tape was stopped before the jury heard the response. Moreover, the State asserts that the trial judge instructed the jury to disregard the objectionable question, in spite of the fact that no answer was heard, and that such an instruction cured any potential prejudice which may have arisen. Finally, the State contends that even if the response had been heard, the trial judge followed the proper remedial steps, such that even then the incident would not have risen to the level of reversible error.

¶21. In *Mitchell v. State*, 539 So. 2d 1366, 1372 (Miss. 1989), this Court found that under Mississippi Rule of Evidence 404(b) evidence of other sexual relations should be limited to those "between the defendant and the particular victim." To do otherwise would be "[inconsistent] with the notion that a defendant is on trial for a specific crime and not for generally being a bad person." *Id*. In this case, however, the issue is whether any such evidence was actually introduced. The trial judge found it was not since Karen's answer to the question was not heard by the jury. As a result, the trial judge overruled defense counsel's motion for a mistrial. Furthermore, the trial judge admonished the jury to disregard the objectionable question, which they affirmatively agreed to do. The trial judge has broad discretion in declaring a mistrial. *See Washington v. State*, 800 So. 2d 1140, 1143 (Miss. 2001). "When an objection is sustained and a jury is admonished to disregard, an appellate court will not often overturn a trial court's discretionary decision to deny a motion for a mistrial." *Lockridge v. State*, 768 So. 2d 331, 339 (Miss. Ct. App. 2000) (citing *Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996); *Wright v. State*, 540 So. 2d 1,

11

4 (Miss. 1989); **Marks v. State**, 532 So. 2d 976, 982 (Miss. 1988)). While a claim of prosecutorial misconduct can be a consideration in determining whether an exceptional situation exists to justify overturning the trial judge's discretionary decision, this case fails to present such a quandary. The incident at issue amounted to an inadvertent mistake in failing to properly edit the tape, combined with the video equipment malfunctioning.[9] In the end, however, all the jury heard was the question. The trial judge, in exercising his discretion, found that alone was insufficient to justify granting the defendant's motion for mistrial. This Court finds the trial judge properly exercised his discretion, and such discretion ought to be granted deference. Therefore, this issue is without merit.

### III. Whether the trial court's determination that Keith Stovall and Bente' Hess qualified as expert witnesses in the field of forensic interviewing was reversible error

¶22. Smith argues the State improperly used the expert opinions of Stovall and Hess as "human polygraphs." Essentially, Smith asserts that while the court would never permit the defense to enter a polygraph result showing that Smith was telling the truth, *see Carr v. State*, 655 So. 2d 824, 836 (Miss. 1995) ("Mississippi law clearly states that polygraph tests and their results are inadmissible ...."), that is what the State is allowed to do via the expert opinions of Stovall and Hess.

---

[9]As the trial judge stated, regarding the VCR, "[t]he doggone thing cuts itself off by itself. If it would stay on, then the witness would have been able to hit the stop button immediately, but the doggone thing cuts itself off evidently." Moreover, the tape was thereafter properly edited for the jury.

¶23.    The State counters by asserting that the trial court properly determined that Stovall and Hess were qualified to offer expert testimony in their specialized field and that their testimony would aid the jury in understanding the facts and issues of the case.[10] Moreover, "'[a] trial judge's determination as to whether a witness is qualified to testify as an expert is given the widest possible discretion and that decision will only be disturbed when there has been a clear abuse of discretion.'" *Logan v. State*, 773 So. 2d 338, 346-47 (Miss. 2000) (quoting *Sheffield v. Goodwin*, 740 So. 2d 854, 856 (Miss. 1999)).

¶24.    After the State examined him on his qualifications, without objection, Stovall, a forensic interviewer for the Southwest Mississippi Children's Advocacy Center, was tendered as an expert in the field of forensic interviews in child sexual abuse cases without objection. He testified that, "[his] job is not to prove or disprove sexual or physical abuse, but to obtain whether it happened, to obtain the information from the child and to assess

---

[10]Mississippi Rule of Evidence 702, prior to May 29, 2003, stated:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise.

Effective May 29, 2003, the gatekeeping responsibilities of the court in evaluating the admissibility of expert testimony were clarified, such that the rule now states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

13

that child's credibility." In making that determination, he followed a protocol for creating a comfortable environment for children during the interview, "RATAC",[11] and a separate protocol for judging the truthfulness and accuracy of the child's statements during the interview, "CCAAC"[12]. After applying that methodology, Stovall opined that Joan's statements were "very consistent and credible with a victim of sexual abuse."[13] At trial, Smith did not object to Stovall's testimony regarding Joan's consistency and credibility.

¶25. Hess, the executive director of the Southwest Mississippi Children's Advocacy Center at the time of the incident, was also tendered as an expert after presenting her qualifications. The parties stipulated that she was an expert in the field of forensic interviewing. She explained her role as a forensic interviewer was designed "to make sure that the child is accurately telling what they have experienced."[14] Hess opined, "I felt like her interview was

_____

[11]"RATAC" is an acronym for: Rapport, Anatomy ID, Touch inquiry, Abuse scenario, and Closure.

[12]"CCAAC" is an acronym for: Content, Context, the child's Affect, Ability, and Consistency.

[13]Specifically, Stovall testified:

I found that she displayed and she provided adequate content information. She told me who, what, when and where.... Her affect or her emotion I found was consistent with someone who would have been sexually abused.... Later in the interview summary, which you'll see in this video, there is a point where she begins crying, weeping. I hand her some [t]issue, and she says, I just don't understand why adults would want to do something like this. And that statement indicated a lot of shame and betrayal, and so I found that to be very consistent and credible with a victim of sexual abuse.

[14]Hess testified that she considered:

[c]onsistency of statement, and we check for consistency from the initial

14

highly credible. I mean, she was able to give details about where they were, who was there, what she was wearing, what took place, and she didn't appear to be fabricating, and she was very consistent with her statement each time." The only discrepancy Hess observed in Karen's interview was when the incident occurred. However, Hess opined, "children just have trouble with times and dates traditionally." As such, that variance did not alter Hess's opinion that Karen's statements were exceedingly credible. Smith did not object to Hess's testimony regarding Karen's credibility.

¶26. Mississippi Rule of Evidence 103(a)(1) states that "[e]rror may *not* be predicated upon a ruling which *admits* or excludes evidence *unless* a substantial right of the party is affected, *and* (1) [i]n case the ruling is one *admitting* evidence, a *timely objection or motion to strike* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context ...." Miss. R. Ev. 103(a)(1) (emphasis added). In this case, Smith neither objected to Stovall or Hess being offered as experts in the field of forensic interviewing in child sexual abuse cases, nor objected to their opinions regarding the consistency and credibility of Joan and Karen's respective statements. In fact, Smith went so far as to stipulate to Hess being an expert. "Because these arguments are not preserved for appeal, this Court cannot reverse based upon them. The assertion on appeal

---

disclosure, whatever was given to us until the time when we interview the child. We also look at other factors, what we call idiosyncratic factors such as if they talk about what they were wearing, what it smelled like, where they were, what they observed, who was there, how did the event unfold. We also check for those things as well as consistency or any reasons that we can depict why the child might lie. We know that children lie just like adults lie ... and so we also look to see if they're telling the truth.

15

of grounds for an objection which was not the assertion at trial is not an issue properly preserved on appeal." *Haddox v. State*, 636 So. 2d 1229, 1240 (Miss. 1994) (citations omitted). *See also Jackson*, 743 So. 2d at 1016.

¶27. Notwithstanding the procedural bar, Miss. R. Ev. 104(e) states, "[Rule 104] does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." Miss. R. Ev. 104(e).[15] Although this Court has never explicitly held that a direct comment on a child sex abuse victim's veracity[16] is reversible error, it has referenced other jurisdictions that find such comments are inadmissible. *See Griffith v. State*, 584 So. 2d 383, 386-87 (Miss. 1991).[17] These courts have found such testimony usurps the

[15]Fed. R. Ev. 104(e) uses identical language, and according to Wright and Miller, "Rule 104(e) only applies when the evidence of weight and credibility is the same as that used to determine the preliminary fact; hence, in most cases the court will have heard the evidence on weight and credibility as part of its determination of the preliminary fact." 21A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Section 5058 (2d ed. 2005).

[16]Note that "veracity" is distinguishable from "credibility." According to Webster's Third New International Dictionary (1986), "veracity" means: "1. devotion to the truth: Truthfulness. 2. power of conveying or perceiving truth: Correctness. 3. conformity with truth or fact: Accuracy. 4. something that is true." *Id.* at 2542. By contrast, "credibility" is defined as: "the quality or power of inspiring belief: worthiness of belief: capacity for belief." *Id.* at 532. Vouching for the veracity of another embraces a weightier effect than commenting on the credibility of an interview.

[17]In *Griffith*, this Court specifically found that:

A direct opinion offered by a witness in a child sexual abuse case as to the child's *veracity* has been held by a majority of courts to be inadmissible. *State v. Holloway*, 82 N.C. App. 586, 587, 347 S.E.2d 72, 73 (1986); *Head v. State*, 519 N.E.2d 151, 153 (Ind. 1988); *State v. Moran*, 151 Ariz. 378, 385, 728 P.2d 248, 255 (1986); *People v. Oliver*, 745 P.2d 222, 225 (Colo. 1987); *see generally* cases cited in *Myers, et al., Expert Psychological Testimony About Child Complaints in Sexual Abuse Prosecution,* 68 Neb.

16

traditional role and function of the jury by giving the jury the expert's opinion on how the case should be decided, *see State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986); *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986); *Holloway*, 347 S.E.2d at 73-74, or does not pass the test for admissibility because it does not assist the jury. *See State v. Friedrich*, 135 Wis. 2d 1, 16, 398 N.W.2d 763, 770 (1987); *Holloway*, 347 S.E.2d at 73. *But see Jones v. State*, 606 So. 2d 1051, 1057-58 (Miss. 1992) ("In *Goodson v. State*, 566 So. 2d [at] 1142 ... we said there is no reason to believe an expert's opinion as to the truthfulness of a child is any more admissible than the results of a lie detector test, and noted that a majority of courts preclude such testimony.... To the extent that Dr. Hampton's testimony may have been an opinion of M.J.'s truthfulness, allowing it was error.... The admission of this testimony was error, but it was *harmless error* ....") (emphasis added); *Jackson v. State*, 743 So. 2d 1008, 1016-17 (Miss. Ct. App. 1999) (offering an example of testimony which did not constitute a direct opinion on the child's veracity).

¶28. First, this Court must determine whether the statements of the victim recounted by a witness are hearsay vel non, and if hearsay, do they fit within a hearsay exception. An

L. Rev. 1, 121, fn. 528 (1989). We have indicated that such testimony is, at best, "*of dubious competency*." *Williams v. State*, 539 So. 2d 1049, 1051 (Miss. 1989). *See also Goodson v. State*, 566 So. 2d 1142, 1153 (Miss. 1990); *Hosford v. State*, 560 So. 2d 163, 166-67 (Miss. 1990); *House v. State*, 445 So. 2d 815, 821-23 (Miss. 1994). On remand, we *caution* the court against allowing direct comments as to [the child's] *veracity*.

584 So. 2d at 386-87 (emphasis added). Note, however, that in *Griffith*, unlike in this case, the victim's out-of-court statements were not videotaped and available for jury consideration. Moreover, this Court's reversal in *Griffith* was based upon a State's witness being "allowed to testify as to statements made by ... [Griffith's victim]." *Id*. at 386.

analysis of the Mississippi Rules of Evidence leads us to the conclusion that the statements of the girls are not hearsay. Miss. R. Ev. 801(d)(1)(B) provides:

> A statement is not hearsay if: ... (1) ... The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive ....

Miss. R. Ev. 801(d)(1)(B). The girls testified at trial, and Smith suggested that their testimony was of recent fabrication and accordingly inconsistent with prior statements. Because the girls testified, the statements are not hearsay by rule. *See also* **Jones**, 606 So. 2d at 1059.

¶29. Recognizing that Miss. R. Ev. 801(d) applies only in limited situations and that the trial court allowed the introduction of evidence on a different basis, we shall also consider the applicability of Miss. R. Ev. 803(25), the "tender years" hearsay exception. Under Miss. R. Ev. 803(25):

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness ....

Miss. R. Ev. 803(25). As both Joan and Karen testified at trial,[18] the sole issue is whether the "time, content, and circumstances of the statement provide substantial indicia of reliability ...." Miss. R. Ev. 803(25). "If this exception is applied in a criminal case, the rights of the defendant under the Confrontation Clause of Federal and State Constitutions must be respected. *See Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)." Comment to Miss. R. Ev. 803(25). This requires the statements to be accompanied by "'particularized guarantees of trustworthiness' under the Confrontation Clause." *Wright*, 497 U.S. at 822 at 656. Factors to be considered in making that determination include:

> (1) whether there is an apparent motive on the declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

Comment to Miss. R. Ev. 803(25). The trial court found, with respect to the statements made by the girls to Principal Dillon and Officer Perryman, that "there is sufficient indicia

---

[18]Comment to Miss. R. Ev. 803(25) states:

> Many jurisdictions limit their analogous exceptions to declarants under the age of fourteen years. However, the exception should not be necessarily limited to a specific chronological age. In appropriate cases, the exception might apply when the declarant is chronologically older than fourteen years, but the declarant has a mental age of less than fourteen years.

Karen was only eleven (11) years of age at the time her statements were made. While Joan was fifteen (15) years old at the time of her statements, she clearly had a "mental age of less than fourteen years." *See* footnote 2.

of reliability to qualify them for admission ....' Therefore, whether the statements were admitted under Miss. R. Ev. 801(d)(1)(B) or 803(25) is of no consequence, as the statements are admissible.

¶30. We would be remiss if we failed to address the valid concerns raised in Justice Graves' separate opinion. In *State v. Lindsey*, the Arizona Court stated:

> [t]he trial judge has *discretion* to allow ... expert testimony [on the behavior patterns of child sexual abuse victims] where it may assist the jury in deciding a contested issue, including issues pertaining to accuracy or *credibility* of a witness' recollection or testimony.... The trial judge may exercise this discretion where there is a reasonable basis to believe that the jury will benefit from the assistance of expert testimony that explains recognized principles of social or behavioral science which the jury may apply to determine issues in the case.... We cannot assume that the average juror is familiar with the behavioral characteristics of victims of child molesting. Knowledge of such characteristics may well aid the jury in weighing the testimony of the alleged child victim. Children who have been the victims of sexual abuse or molestation may exhibit behavioral patterns (*e.g.* recantation, conflicting versions of events, confusion or inarticulate descriptions) which jurors might attribute to inaccuracy or prevarication, but which may be merely the result of immaturity, psychological stress, societal pressures or similar factors as well as of their interaction. Jurors, most of whom are unfamiliar with the behavioral sciences, may well benefit from expert testimony of the general type offered in the present case ....

*Lindsey*, 720 P.2d at 74-75 (emphasis added).

¶31. At the same time, it is incumbent on the trial judge to ensure that certain lines are not crossed by the expert. As the *Lindsey* Court observed, "[i]t is not the expert's function ... to substitute himself or herself for the jury and advise them with regard to the ultimate disposition of the case." *Id*. at 76. *Lindsey* is distinguishable, however, because in that case the expert crossed over into inadmissible testimony on two occasions. The expert stated that "most people in the field feel that it's a very small proportion [of incest victims] that lie."

20

*Id*. at 75.[19] Specifically, "in response to whether [the expert] felt 'that [the alleged victim] is consistent with someone who had been sexually abused *by living at home with her father*,' the expert stated '... I think the likelihood is very strong. ... I feel there's a preponderance of the evidence here.'" *Id*. (emphasis added). Clearly, the expert should not be permitted to pass judgment on whether the *defendant* was the specific perpetrator. Nor should the expert be permitted to state, as Dr. Hampton did in *Jones*, that "it was her opinion that [the victim] was telling the truth." *Jones*, 606 So. 2d at 1055.

¶32.    In this case, however, the testimony of Stovall and Hess pertained to the *credibility* of the interviews with the girls rather than the girls' *veracity*. Evidence that the interviews were *credible*, i.e. capable of being believed, was properly admitted. On the other hand, comments about a witness' *veracity*, i.e. truthfulness, will generally be inadmissible, because of its "dubious competency." *See Williams*, 539 So. 2d at 1051.

---

[19]Note that in *Jones v. State*, which followed adoption of Miss. R. Ev. 803(25), similarly improper questions were asked of, and answered by, Dr. Hampton. Specifically, "[h]ave you formed an opinion over the years concerning whether children that come in with this kind of problem tell the truth about what happened to them?" *Jones*, 606 So. 2d at 1057. To which Dr. Hampton answered, "[c]hildren do not fantasize about experiences that they have not encountered." *Id*. And also, "[f]rom your experience of examining children like [the victim] who have evidence that they have been sexually abused, is your experience that they tell the truth?" *Id*. To which Dr. Hampton answered, "Yes." *Id*. This Court determined that "[r]ealistically, Dr. Hampton's opinion implied an opinion of [the victim's] truthfulness and in this it was error ...." *Id*. at 1058. Simply stated, this Court found that, "[w]hether children generally tell the truth or not about sexual abuse is not relevant as to whether [the victim] told the truth about what happened to her, as it does not make it more probable or less probable that [she] was telling the truth." *Id*. However, this Court also found that this error was harmless error. *See id*.

¶33. The jury had the benefit of examining the videotapes with Joan and Karen's interviews to compare to their in-court testimony, thereby placing the jury in a position to draw upon their own life experiences as to the veracity of the young girls. They could draw their own conclusions from the verbal statements and non-verbal reactions of the girls in the taped interviews and on the witness stand. As always, the jury has the prerogative to accept or reject, in whole or part, the testimony of any witness, expert or lay. Based upon the aforementioned analysis, and because the standard for reversal on appeal as to this issue is "clear abuse of discretion," *Logan*, 773 So. 2d at 346-47 (quoting *Sheffield*, 740 So. 2d at 856), this Court concludes that the trial judge's decision ought to upheld. Nonetheless, this Court cautions trial judges to prudently evaluate witnesses proffered as experts, as not all who claim special expertise are so qualified. Moreover, any opinions as to a witness's *veracity* should generally be excluded, unless otherwise admissible. *See* Comment to Miss. R. Ev. 404(a) ("With regard to character evidence relating to the veracity of witnesses, Rule 404 refers one to Rules 607, 608, and 609.").

## CONCLUSION

¶34. The jury found the testimony of Joan and Karen to be credible and, therefore, determined that the essential elements of both sexual battery and touching and handling a child for lustful purposes were established beyond a reasonable doubt, none of which is inconsistent with a rational trier of facts. The trial judge correctly exercised his broad discretion in denying defense counsel's motion for mistrial and in allowing Stovall and Hess

22

to offer expert opinions in the field of forensic interviewing. Accordingly, this Court affirms the trial court's judgment.

¶35. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS, WITHOUT BENEFIT OF PROBATION, EARLY RELEASE, OR SUSPENSION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND ORDERED TO PAY FINE OF $5,000, AFFIRMED. COUNT II: CONVICTION OF TOUCHING, HANDLING, ETC., CHILD FOR LUSTFUL PURPOSE AND SENTENCE OF TWENTY (20) YEARS, WITHOUT BENEFIT OF PROBATION, EARLY RELEASE, OR SUSPENSION, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND ORDERED TO PAY FINE OF $5,000, OTHER FEES AND COURT COSTS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶36. I agree with the result reached by the Majority, yet I write separately to express some of my deep concerns with the instant case. On the second issue raised by Smith, regarding the admissibility of videotaped evidence, the judge specifically ruled that any "prior bad acts" evidence of sexual impropriety with other victims be edited from the videotape. Despite the judge's prior ruling, the question was played before the jury. When defense counsel objected, the answer was never played, and the jury was admonished to disregard the question. I find the instant situation far more prejudicial than if the prosecution had asked the same improper question to a live witness because the jury was left with the impression that defense counsel objected to the question because he knew that the videotaped testimony would show the witness testifying that the defendant had committed

23

similar bad acts with other individuals. While I am want to find reversible error here, I am of the opinion that this incident comes dangerously close to being reversible error.

¶37.   On whether the trial court erred in admitting of the expert testimony of two forensic interviewers, I reluctantly agree that the lower court should be affirmed as to this issue but only because of defense counsel's failure to pose any objection to this testimony. This Court does not allow the admittance of polygraph testing for the very reason that such evidence impermissibly speaks to the credibility and/or veracity of a witness. By allowing a witness who professes to be an expert in credibility to testify as to the believability or truth of another witness, the court allows a witness to usurp the province of the jury as the finder of fact and allows witness testimony to accomplish the very thing that we seek to prevent by ordering the exclusion of polygraph evidence. *See Mattox v. State*, 240 Miss. 544, 561, 128 So. 2d 368, 373 (1961) (holding that both the taking of and results of polygraph testing were inadmissible because it bolstered the testimony of the witness and prejudiced the defendant); *see also State v. Lindsey*, 720 P.2d 73, 76 (Ariz. 1986) (finding expert opinion testimony "on who is telling the truth . . . is inadmissible, both because it usurps the jury's traditional functions and roles, and because when given insight into the behavioral sciences, the jury needs nothing further from the expert."). I am unconvinced that such an error is harmless and note that the instant situation is distinguishable from that in *Jones v. State*, 606 So. 2d 1051, 1057-58 (Miss. 1992), where this Court found that a doctor's "yes" response to a question regarding the general truthfulness of sexually abused children was harmless error.

24