# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00501-COA

**DEZJON DANIELS A/K/A NOOKIE**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                          **APPELLEE**

DATE OF JUDGMENT:                     03/21/2016
TRIAL JUDGE:                               HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:     PIKE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
                                               BY: HUNTER NOLAN AIKENS
ATTORNEY FOR APPELLEE:            OFFICE OF THE ATTORNEY GENERAL
                                               BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:                     DEE BATES
NATURE OF THE CASE:                   CRIMINAL - FELONY
DISPOSITION:                               AFFIRMED - 08/15/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     After a two-day trial, Dezjon Daniels was convicted of sexual battery in the Circuit Court of Pike County. Daniels was sentenced to thirty-five years in the custody of the Mississippi Department of Corrections (MDOC), with twenty-five years to serve, ten years suspended, and five years of postrelease supervision (PRS). Daniels was also ordered to pay $5000 in restitution to the Crime Victims' Compensation Fund. After the verdict, the trial court denied Daniels's motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. On direct appeal, Daniels raises three issues. After review of the record, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.    On or about July 23, 2014, Pamela Ard reported an incident of sexual battery to Detective Todd Dillon, an investigator with the Pike County Sheriff's Department. Ard reported her son, H.A.,[1] had been sexually molested or raped by Daniels or "Nookie."[2] Daniels and H.A. are cousins, and Ard regularly took her children, H.A. and P.A., to stay with Daniels and his mother, Linda Stalling. At the time of this incident, H.A. was either nine or ten years old, and Daniels was at least twenty-four months older than H.A. Daniels was nineteen years old.

¶3.    H.A. was interviewed at the Children's Advocacy Center by forensic interviewer Jade Douglas. H.A. informed Douglas that Daniels's "front went inside of his back." H.A. and Daniels were left alone one day while Stalling, P.A., and other cousins went to the store. H.A. asked Daniels if he could play the video game that Daniels was playing. H.A. stated Daniels told him that in order to play the game, H.A. had to give him "some booty" or have sex. H.A. stated he went into the bathroom, pulled down his pants, put his hands on the toilet, then Daniels "put his thing in his thing." It was during the interview that Douglas learned H.A. was referring to Daniels's penis entering H.A.'s anus.

¶4.    At trial, Ard testified she frequently dropped off her children at Stalling's house, because Stalling babysat. Ard stated H.A. had been trying to tell her something, but she kept

---

[1] We have used initials to protect the identity of the victim.

[2] Daniels is sometimes referred to as "Nookie" by his family.

ignoring him. Finally, H.A. told her of the abuse that occurred at Stalling's house. Ard testified she called Stalling and threatened to tell police if Stalling and Daniels did not meet her at her house to discuss the incident in person. Upon arrival, Ard confronted Daniels. Ard further testified she asked Daniels if he had sex with H.A., and Daniels replied, "If he said I did it, then I did it." Ard notified police shortly after the exchange with Stalling and Daniels.

¶5. Detective Dillon, Douglas, P.A., and H.A. testified at trial for the State. Daniels testified at trial and vehemently denied abusing H.A. Following a two-day trial, Daniels was found guilty of sexual battery and later sentenced to thirty-five years in the custody of the MDOC, with ten years suspended and five years of PRS. Daniels filed a motion for a JNOV or, in the alternative, a new trial. After a hearing, the trial court denied Daniels's motion. Daniels now timely appeals.

**DISCUSSION**

**I.    Whether the trial court erred in admitting certain expert testimony.**

¶6. This Court has previously held that "the admission of expert testimony is governed by Rule 702 of the Mississippi Rules of Evidence and caselaw, specifically *Mississippi Transportation Commission v. McLemore*, 863 So. 2d 31 (Miss. 2003)." *Carter v. State*, 996 So. 2d 112, 116 (¶13) (Miss. Ct. App. 2008). Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony

3

is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

M.R.E. 702.[3]

¶7.     "[T]he admission of expert testimony is within the sound discretion of the trial judge." *Carter,* 996 So. 2d at 116 (¶13) (citing *McLemore*, 863 So. 2d at 34 (¶4)). "Therefore, the decision of a trial judge will stand unless we conclude that the decision was arbitrary and clearly erroneous, amounting to an abuse of discretion." *Id.* (citation and quotation marks omitted).

¶8.     Also, "the trial court must engage in a two-pronged inquiry, determining whether the expert testimony rests on a reliable foundation and is relevant to the matter." *Worthy v. McNair*, 37 So. 3d 609, 615 (¶16) (Miss. 2010). Furthermore, "regarding the reliability prong the testimony must be grounded in the methods and procedures of science, not merely a subjective belief or unsupported speculation." *Id*. (citing *McLemore*, 863 So. 2d at 36 (¶11)); *see also Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993). Daniels asserts Douglas's opinion was based on speculation, not reliable scientific principles and methods applied to the facts of the case. However, we disagree. This is an excerpt of Douglas's testimony on direct examination:

> Q.     Can you tell us what your opinion is as to whether or not – can you tell us what your opinion is as to his consistency with regard to children

---

[3] The trial in this case preceded the nonsubstantive restyling of the Rules of Evidence in July 2016, so we have used the former language.

that have suffered sexual abuse?

A. The consistency comes with being able to provide the details, the sensory details of how it felt, the position in which his body was at the time of the alleged incident, knowing that it was inside or outside of his, what he calls, back. And being able to know that your pants were up or down and how they got down. All of those play into consistent statements of a child who has been sexually abused.

¶9. Daniels's trial counsel objected to Douglas being proffered as an expert witness. Douglas has a master's degree in social work. She trained for the ChildFirst forensic interviewing protocol through the National Child Protection Training Center. She has interviewed over 900 children regarding alleged sexual abuse, alleged physical abuse, and witnesses to violent crime. Douglas relied on her training in gathering as much information as possible from H.A. Therefore, we find no abuse of discretion in the trial court's decision accepting Douglas as an expert witness in forensic interviewing.

¶10. Further, Daniels argues Douglas's testimony impermissibly passed judgment on whether he was the specific perpetrator of the alleged abuse. The following is an excerpt from Douglas's testimony at trial during direct examination:

Q. Did you form an opinion about [H.A.'s] statements to you with regard to its consistency in your interview?

A. Yes.

Q. Can you tell us what your opinion is as to whether or not – can you tell us what your opinion is as to his consistency with regard to children that have suffered sexual abuse?

A. The consistency comes with being able to provide the details, the sensory details of how if felt, the position in which his body was at the

5

time of the alleged incident, knowing that it was inside or outside of his, what he calls, his back. And being able to know that your pants were up or down and how they got down. All of those play into consistent statements of a child who has been sexually abused.

Q. And did you form an opinion in this case?

A. Yes.

Q. And what was that opinion?

A. It was consistent with the allegations of sexual abuse by Dezjon Daniels.

¶11. The Mississippi Supreme Court has held that "the expert should not be permitted to pass judgment on whether the defendant was the specific perpetrator." *Smith v. State*, 925 So. 2d 825, 838 (¶31) (Miss. 2006). However, we find that Douglas's testimony did not conclude that Daniels was the perpetrator. Douglas's testimony pertains to H.A.'s credibility rather than H.A.'s veracity. The Supreme Court has previously held that "any opinions as to a witness's veracity should generally be excluded, unless otherwise admissible." *Id.* at 839 (¶33). However, "[e]vidence that [an] interview[] w[as] credible, i.e.[,] capable of being believed, [i]s properly admitted." *Id.* at 838 (¶32).

¶12. Furthermore, Douglas found that H.A.'s characteristics were consistent with children who had been abused. "While an expert may not opine that an alleged child-sexual-abuse victim has been truthful, the scope of permissible expert testimony under Rule 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused." *Lattimer v. State*, 952 So. 2d 206, 221 (¶38)

(Miss. Ct. App. 2006) (citation omitted).

¶13. Additionally, the jury examined the videotaped interview between Douglas and H.A. The jury also heard the testimony of Daniels and were able to draw their own conclusions regarding other witness testimony. "As always, the jury has the prerogative to accept or reject, in whole or part, the testimony of any witness, expert or lay." *Smith*, 925 So. 2d at 839 (¶33). Accordingly, we find no abuse of discretion in the trial court's decision to overrule the objection allowing Douglas's expert testimony.

II. **Whether admission of H.A.'s forensic medical records violated Daniels's Sixth Amendment right to confrontation, and whether trial counsel's stipulation of the records constituted ineffective assistance of counsel.**

A. **H.A.'s Forensic Medical Records**

¶14. Daniels asserts H.A.'s forensic medical records are testimonial in nature and violate his Sixth Amendment right to confrontation. "A document is testimonial when it is created for the sole purpose of the State's use as evidence against the defendant." *Vanwey v. State*, 147 So. 3d 367, 370 (¶10) (Miss. Ct. App. 2014) (citation omitted). Daniels asserts H.A.'s medical records are testimonial, because the police referred H.A. for forensic evaluations and numerous officers were present for the interview. As a result, Daniels asserts the forensic records are inadmissible hearsay. "However, a general hearsay objection is insufficient to preserve an alleged Confrontation Clause violation for appellate review." *Anthony v. State*, 23 So. 3d 611, 620 (¶41) (Miss. Ct. App. 2009) (quoting *Briggs v. State*, 16 So. 3d 696, 698-99 (¶11) (Miss. Ct. App. 2008)). In *Anthony*, "[the defendant] made no Sixth-Amendment

7

objection to the admission of the abuse record at trial or in [the] posttrial motion, [and] her arguments on this issue [were] procedurally barred." *Id*.

¶15. Daniels's trial counsel did not object to the introduction of the records into evidence. In fact, Daniels's trial counsel stipulated to the forensic records being submitted into evidence. Notwithstanding the procedural bar, this Court finds no abuse of discretion by the trial judge allowing H.A.'s forensic report and medical records into evidence. The record reflects that Daniels's trial counsel relied on the results of the forensic records to develop a defense.

### B.    Assistance of Counsel

¶16. "To prove ineffective assistance of counsel, [one] must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Jackson v. State*, 73 So. 3d 1176, 1181 (¶19) (Miss. Ct. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Furthermore, the merits of a claim of ineffective assistance of counsel brought on direct appeal should be addressed only when "(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Id*. at 1181 (¶20); *see also Colenburg v. State*, 735 So. 2d 1099, 1101 (¶5) (Miss. Ct. App. 1999).

¶17. The State does not stipulate the record affirmatively shows ineffectiveness. However, Daniels contends his counsel provided deficient representation because of counsel's decision

to stipulate to the admission of the forensic report. However, we disagree with Daniels's assertion. The stipulation of the medical records into evidence is a part of trial counsel's defense strategy. Daniels submits there is no reasonable trial strategy in stipulating the records that violated his Sixth Amendment right to confrontation. However, the forensic records did not document any signs of physical trauma. Furthermore, a strong presumption exists "that the attorney's conduct fell within the wide range of reasonable professional assistance." *Hancock v. State*, 964 So. 2d 1167, 1175 (¶18) (Miss. Ct. App. 2007). "[C]ounsel's choice[s] of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy and will not stand as support for an ineffective assistance of counsel claim." *Id*. (citation and quotation marks omitted).

¶18.    Accordingly, we find no merit in Daniels's claim that he received ineffective assistance of counsel. Moreover, this Court has held that "when a party raises an ineffective assistance of counsel claim on direct appeal, the proper resolution is to deny relief without prejudice to the defendant's right to assert the same claim in a postconviction relief proceeding." *Lattimer*, 952 So. 2d at 222 (¶42) (citation omitted).

        **III.    Whether the evidence was sufficient to establish venue.**

¶19.    Daniels contends the State failed to present sufficient evidence to establish beyond a reasonable doubt that the incident occurred in Pike County. "Proof of venue is indispensable to a criminal trial[,] and it may be proved by direct or circumstantial evidence." *Smith v.*

9

*State*, 646 So. 2d 538, 541 (Miss. 1994) (citations omitted). In *Smith*, "none of the witnesses testified during the State's case-in-chief that the crimes took place in [the venue in which the incident was alleged to have occurred]." *Id*.

¶20.    Ard testified the incident took place at Stalling's house, located "maybe five or six miles away from her home." She testified Stalling's house is located in Pike County. Daniels asserts no witness testified as to the address of Daniels's house. Further, Daniels argues Ard guessed the location of the house while giving her testimony. The following is an excerpt of Ard's testimony during direct examination:

> Q.    Okay. What state[4] is it in?
>
> A.    It's in Magnolia. It's in Osyka, where she lives.
>
> Q.    Okay. What State?
>
> A.    Mississippi.
>
> Q.    Okay. And what County?
>
> A.    Walthall – I mean, Pike County.

¶21.    "Direct or circumstantial evidence may be used to prove venue." *Lee v. State*, 910 So. 2d 1123, 1126 (¶10) (Miss. Ct. App. 2005) (citation omitted). Although Ard mistakenly named the wrong city in which Stalling lives, she quickly corrected herself. Moreover, both cities Ard named are located in Pike County.

¶22.    Although the State could have presented additional evidence to establish venue, Ard's

---

[4] In the record, the word "state" is written. However, the word should be "city."

testimony sufficiently established venue.[5] Accordingly, we affirm the judgment of the circuit court.

¶23. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR. WILSON J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[5] In *Turner v. State*, 220 So. 2d 295, 297 (Miss. 1969), the Court held, "although additional proof could have been offered by the State to prove venue even more conclusively, . . . under all the facts . . . the proof was sufficient to meet the burden placed on the State."