# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00920-COA

JAMES JOHNSON A/K/A BOBO                                    APPELLANT

v.

STATE OF MISSISSIPPI                                        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/02/2022 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ZAKIA BUTLER CHAMBERLAIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAUREN GABRIELLE CANTRELL |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/12/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., GREENLEE AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     James Johnson appeals his Jasper County Circuit Court convictions and sentences to a total of eighty years in custody for one count of possession of methamphetamine and one count of trafficking Vyvanse. Johnson challenges the sufficiency and weight of the evidence on appeal. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Officers with the Jasper County Sheriff's Department received a bench warrant for Johnson's arrest based on an unrelated incident. When officers dressed in plain clothes arrived at Johnson's mother's home (his last known whereabouts), they saw Johnson in the

passenger seat of a black Chevy Trailblazer. As they approached, Johnson noticed them and attempted to bend down and close the car door. One officer stopped the door from closing and would later testify that he saw Johnson "dropping, putting, or shoving" something under the passenger seat. The officer asked Johnson to step out of the vehicle, but Johnson refused. The officers then removed Johnson from the vehicle, causing Johnson to yell for his mother, who was inside the house.

¶3.    After being detained, Johnson told the officers, "[y]ou aren't going to search that vehicle." The officers requested a search warrant based on their observation of a small plastic bag (often referred to as a "dime bag") and a digital scale in plain view on the passenger side floorboard. After obtaining the warrant, the officers searched the vehicle and found a bag with 10.414 milligrams of methamphetamine and a thermos with fifty-one 20-milligram pills of Vyvanse tucked underneath the passenger seat. Investigators also found four fake one-hundred dollar bills and pill bottles with the labels scratched off. No drugs were found on Johnson's person. The officers ran the tag on the vehicle and determined that it was registered to someone named Richard Hosey.

¶4.    Johnson's mother came out of the house while the officers detained Johnson. She later testified that she saw an officer sitting in the passenger seat prior to the search warrant arriving. She also said she did not know that either Johnson or the vehicle was at her house that morning. However, she stated that she knew Johnson was installing an amplifier in the vehicle. She also testified that Johnson drove the vehicle once or twice a week, and the last time she knew he had driven it was five or six days before the arrest. Lastly, she said she

2

knew other people regularly drove the vehicle and that the vehicle did not belong to Johnson.

¶5.     After the State presented its case at trial, Johnson moved for a directed verdict based on insufficiency of the evidence, which the trial court denied.  After calling his mother to testify in his defense, Johnson rested without testifying and renewed his motion for a directed verdict, which was also denied.  The jury then deliberated and found Johnson guilty of both counts.  Johnson then moved for judgment notwithstanding the verdict or a new trial based on the weight of the evidence.  The trial court denied this motion as well.

¶6.     On appeal, Johnson challenges both the sufficiency and the weight of the evidence. Specifically, Johnson argues that the State failed to sufficiently establish the "constructive possession" element for possession and trafficking, and as such he was entitled to an acquittal or, alternatively, a new trial.

## STANDARD OF REVIEW

¶7.     This Court reviews de novo a trial court's ruling on the legal sufficiency of the evidence.  *Reindollar v. State*, 296 So. 3d 739, 742 (¶11) (Miss. Ct. App. 2020) (citing *Brooks v. State*, 203 So. 3d 1134, 1137 (¶11) (Miss. 2016)).  When reviewing a case for sufficiency of the evidence, "[a]ll credible evidence [that] is consistent with guilt must be accepted as true, and the State is given the benefit of all favorable inferences that may be reasonably drawn from the evidence."  *Id*. at 742 (¶11) (quoting *Burrows v. State*, 961 So. 2d 701, 705 (¶9) (Miss. 2007)).  The evidence must be examined "in the light most favorable to the State, while keeping in mind the beyond-a-reasonable-doubt burden of proof standard." *Id*. (quoting *Haynes v. State*, 250 So. 3d 1241, 1244 (¶6) (Miss. 2018)).  The supreme court

3

has clarified that "[s]hould the facts and inferences . . . point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render." *Id*. (internal quotation marks omitted) (quoting *Brown v. State*, 965 So. 2d 1023, 1030 (¶25) (Miss. 2007)). Essentially, "[t]he relevant question is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quoting *Shelton v. State*, 214 So. 3d 250, 256 (¶29) (Miss. 2017)).

¶8. For rulings on the weight of the evidence, "[o]ur role as appellate court[s] is to review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017); *see also Smith v. State*, 925 So. 2d 825, 832 (¶16) (Miss. 2006). The verdict will be disturbed only "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bowser v. State*, 182 So. 3d 425, 431 (¶15) (Miss. 2015). A new trial should only be granted in "exceptional cases in which the evidence preponderates heavily against the verdict." *Id*. (quoting *Smith*, 925 So. 2d at 832 (¶16)).

## DISCUSSION

### I. Sufficiency of the Evidence

¶9. Again, "we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lollis v. State*, 373 So. 3d 1004, 1007 (¶12) (Miss. 2023) (quoting *Lenoir v. State*, 222 So. 3d 273, 279 (¶25)

4

(Miss. 2017)).  To support a conviction for possession of a controlled substance, our Supreme Court precedent requires the following:

> [T]here must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it.  Constructive possession may be shown by establishing that the drug involved was subject to the defendant's dominion or control.  Proximity is usually an essential element, but by itself is not adequate in the absence of other incriminating circumstances.

*Terry v. State*, 324 So. 3d 753, 755-56 (¶8) (Miss. 2021) (quoting *Haynes*, 250 So. 3d at 1244-45 (¶8)).  "[W]hen contraband is found in a vehicle that is not owned by a defendant, mere physical proximity to the contraband does not, in itself, show constructive possession." *Reindollar*, 296 So. 3d at 743 (¶14) (quoting *Haynes*, 250 So. 3d at 1245 (¶8)).  Rather, the State must show additional incriminating circumstances connecting the defendant to the contraband. *Carver v. State*, 227 So. 3d 1090, 1094 (¶12) (Miss. 2017) (citing *Fultz v. State*, 573 So. 2d 689, 690 (Miss. 1990)).  In other words, if the vehicle in which the drugs were found is not owned by the defendant, the State must present additional evidence that shows the defendant was aware of the presence and character of the drugs.

¶10.    In *Reindollar*, the defendant was driving a truck that belonged to his brother from Texas.  *Id*. at 741 (¶6).  The truck was parked on the side of the highway next to an 18-wheeler.  *Id*. at (¶4).  Reindollar and the driver of the 18-wheeler were moving items from the 18-wheeler to the truck when an officer arrived on the scene.  *Id*.  The officer testified that Reindollar seemed "extremely nervous" and acting like he was under the influence of a stimulant because he was sweating, fidgety, and his pupils were "constricted." *Id*. at (¶5).  Reindollar consented to allow the officer to search the truck.  *Id*. at (¶6).  The officer testified

5

that he saw digital scales visible in the door pocket. *Id*. While searching the vehicle, the officer found two bags of methamphetamine stashed in the headliner of the vehicle above the steering wheel. *Id*. No drugs were found on Reindollar's person, and Reindollar never admitted to possession of the scales or the drugs found in the vehicle; however, he did admit to driving the vehicle to Mississippi from Texas. *Id*. at (¶9). Reindollar was charged and convicted of possession of a controlled substance. *Id*. at (¶10).

¶11. On appeal, Reindollar argued that the State failed to prove he was aware of the presence and character of the drugs found in the vehicle. *Id*. at (¶12). Reindollar pointed to the fact that he did not own the vehicle, was not in exclusive control of the vehicle, and did not know the drugs were in the vehicle. *Id*. at 743 (¶15). On review, our Court found that because Reindollar appeared to be under the influence of some type of stimulant, the drugs were found in the headliner above the steering wheel (a common place for storing illicit substances), and scales were in plain view of the driver's seat, "other incriminating circumstances" existed that could be used to find constructive possession. *Id*. at (¶16-18). Because of these other circumstances, our Court found that the record reflected substantial evidence upon which a jury could have found Reindollar constructively possessed methamphetamine. *Id*. at 744 (¶20).

¶12. We find *Reindollar* is directly on point with the present case. Here, officers testified that when they arrived at his mother's home, Johnson dropped down and attempted to close the door on the passenger side. They also testified that they saw Johnson drop something onto the floor. After Johnson was detained, Johnson told the officers, "[Y]ou are not going

6

to search that vehicle." The officers, after seeing a digital scale in plain view on the passenger-side floorboard, requested and obtained a search warrant. The officers searched the vehicle and found the methamphetamine and Vyvanse hidden under the passenger seat.

¶13. Similar to *Reindollar*, Johnson was not the owner of the vehicle, but he had permission to use it on a few days out of the week. The drugs in *Reindollar* were found above the steering wheel but hidden from view. *Reindollar*, 296 So. 3d at 741 (¶6). The drugs in Johnson's case were found underneath the passenger seat, also hidden from view, but with a bag and scales in plain view. Just as in *Reindollar*, although Johnson did not own the vehicle in question and the drugs were hidden from view, a reasonable jury could still find Johnson exercised control or dominion over the drugs because of other incriminating circumstances. Johnson's behavior when the officers arrested him was exceedingly suspicious. He attempted to hide from the officers and close the car door. He also told the officers not to search the vehicle despite none of the officers asking or making any moves to do so. Further, on the passenger-side floorboard, where Johnson was allegedly installing an amplifier, was the plastic bag and digital scale in plain view. Further, while no direct proof was produced that Johnson drove the vehicle to his mother's house, Johnson's mother testified that neither Johnson nor the car was at her house the night before, and indeed she was unaware they were there that morning until the police arrived. A reasonable jury could infer from the fact that no other people or vehicles were present that Johnson did in fact drive the vehicle there the previous night. Lastly, despite Johnson's argument that he was installing an amplifier into the vehicle, no evidence was presented supporting this contention.

7

¶14.   Pursuant to *Reindollar*, we find that a reasonable jury could have found the evidence presented above compelling enough to find Johnson guilty beyond a reasonable doubt. For this reason, we find Johnson's argument that the State failed to present sufficient evidence of his guilt unconvincing.

## II.   Weight of the Evidence

¶15.   Johnson argues that should we find sufficient evidence supports his convictions, the jury's verdicts were against the overwhelming weight of the evidence.

¶16.   The Supreme Court has stated, "[W]hen reviewing a motion for [a] new trial, neither this Court nor the Court of Appeals sits as thirteenth juror." *Little*, 233 So. 3d at 292 (¶20) (internal quotation marks omitted). Appellate courts do not make independent resolutions of conflicting evidence, nor do they reweigh evidence or make witness-credibility determinations. *Carson v. State*, 341 So. 3d 995, 1000 (¶11) (Miss. Ct. App. 2022) (citing *Little*, 233 So. 3d at 289 (¶1)). Instead, "when the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little*, 233 So. 3d at 292 (¶20) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). Accordingly, on appeal, we must weigh the evidence in the light most favorable to the verdict, "only disturbing a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. at (¶21).

¶17.   Officers testified that Johnson dropped down and tried to close the passenger side door when they approached. When the officers stopped Johnson from closing the door, they

saw him "dropping, putting, or shoving" something under the seat. While a jury could have found Johnson's alternative interpretations of the evidence believable (that he was working on the amplifier), this evidence was for the jury to weigh, and the jury found the State's evidence more convincing. Johnson presents no evidence to this Court that supports the contention that the jury's verdict was "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bowser*, 182 So. 3d at 431 (¶15). Based on this reasoning, we must find no abuse of discretion in the circuit court's denial of Johnson's motion for a new trial.

## CONCLUSION

¶18. The court properly denied Johnson's motion for judgment notwithstanding the verdict because there was sufficient evidence upon which a reasonable jury could have found guilt. Further, the court acted within its discretion by denying the motion for a new trial.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**